# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3077

_____

Freda M. Bryan,                           *
                                          *
            Appellant,                    *
                                          *   Appeal from the United States
      v.                                  *   District Court for the
                                          *   Eastern District of Missouri.
Norfolk and Western Railway               *
Company, a corporation,                   *
                                          *
            Appellee.                     *
                                          *


_____

Submitted: January 12, 1998
      Filed: September 10, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, and WOLLMAN and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Honorable Pasco M. Bowman, II.

Plaintiff Freda M. Bryan appeals from the summary judgment the district court[2] entered against her in this wrongful death action.  We affirm.

Early on the morning of March 18, 1993, Charles Bryan set off for work in Jonesburg, Missouri.  He stopped at the home of John Wells, a co-worker with whom he often drove to work.  On that morning, Mr. Wells did not accompany Mr. Bryan, so at 5:45 a.m., Mr. Bryan continued on alone.  He drove west down the Wells' driveway in his truck, turned north onto Massas Creek Road, and proceeded about 200 feet onto a grade crossing, where he was struck and killed by a westbound freight train.  At the time of the accident, the Massas crossing was protected only by reflectorized crossbucks, the familiar X-shaped signs which read, "RAILROAD CROSSING."  The crossbucks had been installed pursuant to a state-wide plan by the  Missouri Public Service Commission to improve safety devices at all grade crossings in the state, and federal funding had contributed to the installation.

Bryan's wife brought this wrongful death suit in Missouri state court to recover damages for her loss.   She named as a defendant the Norfolk and Western Railway Company (the N&W), which operated the train and owned the tracks at the grade crossing where Mr. Bryan died.  The N&W properly removed the action to the district court for the Eastern District of Missouri on the basis of diversity jurisdiction, see 28 U.S.C. §§ 1332, 1441, and cross-claimed against the city and county in which the crossing was located, as well as the Missouri Highway Commission, to whose dismissal all parties later stipulated.  The N&W then moved for summary judgment, which the district court granted.  The city and county were dismissed upon the grant of summary judgment.

---

[2]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri, hearing the case by consent of the parties pursuant to 18 U.S.C. § 636(c) (1994).

On appeal, Mrs. Bryan contends that the district court erred by granting summary judgment. First, she claims a fact issue exists over whether the N&W's engine crew failed to warn of the train's approach to the Massas crossing; second, that there is an issue of fact concerning whether the crew failed to keep a proper lookout as they approached the crossing; and finally, that her claim that the N&W failed to maintain the grade crossing adequately is not preempted by federal or state law. We review the district court's grant of summary judgment by the well-known de novo standard, "viewing the evidence in the light most favorable to [the non-moving party], and . . . affirm[ing] only if we agree there are no genuine issues of material fact and that the [moving party] is entitled to judgment as a matter of law." United States v. Dico, Inc., 136 F.3d 572, 578 (8th Cir. 1998); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Sitting in diversity, we apply the substantive law of the applicable state, in this case, Missouri. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Finally, we review de novo a district court's determination of state law, see Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

## I. Failure to Warn

The N&W's common-law duty to warn of a train's approach to a grade crossing has been codified in Missouri. A bell, horn, or whistle shall "be sounded at least eighty rods [one quarter mile] from the place where the railroad shall cross any such road or street . . . and be sounded at intervals until it shall have crossed such road or street." Mo. Rev. Stat. § 389.990 (1994). Should the railroad fail to fulfill this duty, and should that failure result in injury, the railroad is liable for the injury. Id. Mrs. Bryan asserts that the N&W did not signal the approach of its freight train, and that this failure caused her husband's death. To make a sufficient offer of proof in response to a motion for summary judgment, she must elicit admissible evidence that no warning sounded. Missouri law carefully describes what type of evidence is admissible.

> [N]egative evidence, such as "I did not hear," is positive and of substantial probative force or value in a situation where it is reasonably certain the witness could and would have heard, that is, where "it is shown that a witness was in close proximity to the track, in a position to have heard the whistle (or bell) if it was sounded, and was attentive to whether the whistle was in fact sounded."

Chamberlain v. Thompson, 256 S.W.2d 779, 781-82 (Mo. 1953) (quoting Knorp v. Thompson, 212 S.W.2d 584, 588 (Mo. 1948) (en banc)).

In opposition to the N&W's summary judgment motion, Mrs. Bryan submitted affidavits of John and Elaine Wells, the couple whose house her husband had visited shortly before the accident. In response, the N&W deposed the Wells, and additionally introduced depositions from the train crew. Elaine Wells' affidavit stated that she did not hear any whistle on the morning of March 18, 1993; John Wells' affidavit stated that he heard a whistle only "when the train was adjacent to [his] house." (J.A at 184.) However, the deposition testimony of both witnesses revealed more. Mrs. Wells testified that she was in the kitchen of her house, in the corner farthest from the tracks, and heard no sounds of a train at all until her husband opened the front door, at which time she heard a train. She also testified that, living in such close proximity to the tracks, she had become accustomed to hearing trains, and that, on the fateful morning, she had no particular reason to be attentive to the sounds of trains near the house. Mr. Wells testified in his deposition that he first heard the train whistle when it was near the house, but that he couldn't say how near, nor did he look outside to see the train, nor was he sure whether the train had come even with the house or whistled at some unknown distance east. Contrarily, the train crew described in detail the route they traveled. They crossed three roads in short order, the third of which was Massas Creek Road where Mr. Bryan died. They testified that they began sounding the whistle in advance of the first crossing and continued to sound it until the accident at Massas Creek Road. The total distance from where the whistle first sounded to the Massas Crossing was 3,856 feet--well over the required quarter mile.

4

In reviewing whether a grant of summary judgment was appropriate -- whether any genuine issue of material fact existed regarding the N&W's alleged failure to warn of the approach of their train -- we do not weigh the evidence or attempt to determine witness credibility. See Cody v. Cigna Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir. 1998). Nonetheless, Missouri law clearly precludes admission of the Wells' "negative evidence," which purports to show that no whistle warned of the impending approach of the train. See Chamberlain, 256 S.W.2d at 781-82; Knorp, 212 S.W.2d at 588. We do not engage in a credibility determination when we acknowledge, as did the district court, that there is no showing that either witness was actually attentive to whether a train whistle blew, and that it is unclear whether Mrs. Wells was in a position to hear a whistle if it in fact blew. Since Missouri law requires us to disregard the Wells' testimony, there exists no dispute regarding the train's warning on the record before us, and summary judgment on Mrs. Bryan's failure to warn claim was appropriate. The evidence is insufficient as a matter of law to generate a factual question of whether or not the whistle was sounded.

## II. Failure to Keep a Lookout

Mrs. Bryan argues next that she demonstrated that a genuine issue of material fact exists on the question of whether the N&W failed to keep a proper lookout as the train approached the Massas crossing. To survive summary judgment on this claim, she must create a genuine question of fact on whether the crew stayed properly attentive to vehicular traffic, and also on whether, had they kept their lookout, the accident would have occurred. See Bartlett v. Kansas City S. Ry., 854 S.W.2d 396, 400 (Mo. 1993) (en banc). As the district court noted, Missouri law did not require the train crew to brake as soon as they saw Mr. Bryan, but only when he entered the "zone of danger," that point where an accident would certainly occur. See, e.g., Bunch v. Missouri Pac. R.R., 386 S.W.2d 40 (Mo. 1965) (no duty to stop the train simply because a vehicle slowly approaches the crossing); Bulkley v. Thompson, 211 S.W.2d 83 (Mo. Ct. App. 1948) (no duty on train until traveler enters danger zone). Mr. Bryan

5

passed the "point of no return" at 10 miles per hour roughly 2 seconds before the train arrived. At 50 miles per hour, the 47-car train could not possibly have stopped in so short a time. So, even if Mrs. Bryan could show that the crew was not looking, she has not created a question of fact demonstrating that such a failure caused the accident. Once Mr. Bryan entered the zone of danger, no further action by the train crew could have altered the chain of events rapidly enough to prevent the collision. Since Mrs. Bryan could not prove causation, the district court correctly granted summary judgment on this claim.

### III. Failure to Maintain the Crossing

Mrs. Bryan's final theory of negligence is that the N&W failed to properly maintain the grade crossing at Massas Creek Road. The district court granted the N&W's motion for summary judgment on the grounds that any common-law negligence claims for failure to maintain the crossing were preempted by both federal and state law. Mrs. Bryan appeals that determination.

The N&W acknowledges that it had a duty at common law to maintain adequate protections at all its grade crossings. It asserts, however, that regulations promulgated pursuant to the Federal Railroad Safety Act of 1970 preempt any claim against it. See 49 U.S.C. § 20106 (1994) and 23 C.F.R. § 646.214(b)(3) and (4) (1998). This federal regulation "cover[s] the same subject matter as [state] negligence law pertaining to the maintenance of . . . grade crossings," CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 664 (1993), and "[e]xamination of these regulations demonstrates that, when they are applicable, state tort law is preempted." Id. at 670. The question, then, is whether the regulations are applicable to the Massas crossing. If so, Mrs. Bryan's claim is preempted.

Federal regulations are applicable if federal funds have been expended for the installation of the warning devices at the crossing. "Federal funding is the touchstone

of preemption in this area." Elrod v. Burlington N. R.R., 68 F.3d 241, 244 (8th Cir. 1995). To support its motion for summary judgment, the N&W presented both a deposition and an affidavit from its Assistant Director of Safety to show that the N&W had been reimbursed by federal monies for its installation of crossbucks across the state, including those in place at Massas Creek Road. It also presented the Missouri state contract and Missouri Public Service Commission order regarding that installation. This uncontradicted evidence demonstrates conclusively that federal funds were expended for the crossbucks at the Massas crossing.

Despite this showing, Mrs. Bryan argues that the federal regulations on grade crossing safety were not followed at the Massas crossing, and therefore, the regulations are not "applicable."[3] She bases this claim on the testimony of her expert who asserted

---

[3]The regulation in question, 23 C.F.R. § 646.214(b)(3) and (b)(4) reads: (3)(i) "*Adequate warning devices*," under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
   (A) Multiple main line railroad tracks.
   (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
   (C) High speed train operation combined with limited sight distance at either single or multiple track crossings.
   (D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
   (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
   (F) A diagnostic team recommends them.
(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

that the Massas crossing demonstrated the characteristics listed in subsections (B), (C), and (E) of section 646.214(b)(3). Mrs. Bryan claims that since the Massas crossing demonstrated these characteristics and no diagnostic team specifically exempted it from the (b)(3) requirement of an automatic gate, the federal regulations are not applicable and have not preempted her state common-law negligence action. However, a line of cases in this circuit since Easterwood makes clear that when federal funds are expended for grade crossing warning devices, state law negligence claims are preempted if those devices are installed and working. Mrs. Bryan relies heavily on St. Louis S.W. Ry. v. Malone Freight Lines, 39 F.3d 864 (8th Cir. 1994), cert. denied, 514 U.S. 1110 (1995), and Elrod, 68 F.3d 241 (8th Cir. 1995), to show that her claim is not preempted. She misreads the law of this circuit.

In Malone, federal funding had been earmarked for warning lights and a crossing gate some 15 months before the accident from which the lawsuit arose. The lights had been installed, and construction of the gates had begun. In remanding for trial on the plaintiff's inadequate signalization claim, we held that federal preemption does not occur when funds are designated, but only when the planned devices are installed and operative. Malone, 39 F.3d at 867. On that basis in Elrod, we held that the plaintiff's claims were preempted since "it is undisputed . . . that the warning devices were installed and operating at the time of the accident." Elrod, 68 F.3d at 244. Again, we have held that "[a]fter federally funded warning devices are installed and operating, federal preemption occurs." Kiemele v. Soo Line R.R., 93 F.3d 472, 476 (8th Cir. 1996). In Kiemele, we held that the inadequate protection claims were not preempted, because there was a factual issue whether the devices -- crossbucks just like the ones before us -- had lost their reflectivity, and thus were no longer "operating." 93 F.3d at

---

(4) For crossings where the requirements of §646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

476.  Mrs. Bryan has raised no such issue.  See also Steva v. Soo Line R.R., No. 96-4198, 1997 WL 381854 (8th Cir. 1997) (unpublished disposition) (holding that "[t]he federal government's funding of crossing devices implicitly indicates federal regulators have considered the devices' adequacy . . . ").

Mrs. Bryan also relies on Shots v. CSX Transportation, Inc., 38 F.3d 304 (7th Cir. 1994).  In Shots, the court did not read Easterwood "literally," and permitted the plaintiff to take her inadequate warning claims to the jury despite a showing that federal funds had paid for the warning devices at the crossing in question, as Mrs. Bryan would like to do.  We have addressed this argument before.  "While Shots is undeniably more favorable to the plaintiffs, it is inconsistent with our Court's reading of Easterwood in Malone, and we are bound by Malone."  Elrod, 68 F.3d at 244.  One might add that we are also bound by Elrod and Kiemele.  We continue to hold that once federal funds have been expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations.  The district court correctly granted summary judgment in favor of the N&W for this reason.  Since we find that the district court correctly determined that Mrs. Bryan's common law inadequate signalization claim is preempted by federal law, we decline to address whether Missouri statutory law has abrogated it.

IV.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9