# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————————

No. 97-4076

————————————

| | | |
|---|---|---|
| Elmer F. Bock, Administrator of the Estate of Phyllis Bock, Deceased, | * * * | |
| Appellant, | * * | Appeal from the United States |
| v. | * * | District Court for the Eastern District of Arkansas. |
| St. Louis Southwestern Railway Company, Southern Pacific, | * * * * | |
| Appellee. | * * | |
| ———————————— | * * | |
| Association of American Railroads, | * * | |
| Amicus on Behalf of Appellee. | * * * | |

————————————

Submitted: January 13, 1999
Filed: June 30, 1999

————————————

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

————————————

HANSEN, Circuit Judge.

Elmer F. Bock, the administrator of the estate of Phyllis Bock, appeals from the district court's[1] grant of summary judgment in favor of the St. Louis Southwestern Railway in Bock's wrongful death action. We affirm.

I.

The relevant facts, viewed in the light most favorable to Bock, are as follows. On March 10, 1992, Phyllis Bock was driving her car on Main Street in Roe, Arkansas. Main Street intersects railroad tracks owned by St. Louis Southwestern Railway Company (Southwestern). As Phyllis Bock crossed the tracks, a Southwestern train struck and killed her. At the time of the accident, crossbucks provided the sole protection at the Main Street crossing. Crossbucks are X-shaped signs that read "RAILROAD CROSSING" in reflectorized letters. The crossbucks were installed in 1980 as part of a statewide initiative to improve the safety of all railroad grade crossings. The United States Department of Transportation—Federal Highway Administration approved the expenditure of federal funds for use in the Main Street project.

In 1988 a diagnostic team organized by the Arkansas Highway Department inspected the Main Street crossing and recommended that the crossing be protected by lights and automatic gates. The federal government provided 90 percent of the cost, while Southwestern paid the City of Roe's 10 percent share. Southwestern received final authority to upgrade the crossing in September of 1991, and completed the project in March 1992, shortly after the accident that killed Phyllis Bock.

---

[1] The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, hearing the case by consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

Elmer Bock, Phyllis Bock's father and the administrator of her estate, filed this wrongful death action in federal court on the basis of diversity of citizenship. Bock's original complaint included several theories of liability which are no longer relevant for the purposes of this appeal. Southwestern moved for summary judgment on the basis of federal preemption, and the district court granted the motion on May 12, 1997. On November 12, 1997, after Bock amended his complaint, the district court entered a final judgment dismissing Bock's case. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Bock, the nonmoving party. Bryan v. Norfolk and Western Ry. Co., 154 F.3d 899, 901 (1998), cert. dismissed, 119 S. Ct. 921 (1999). We will affirm the district court's judgment only if there are no genuine issues of material fact and Southwestern is entitled to summary judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.

A.      Abnormally Dangerous Crossing

Bock first argues that his wrongful death action is not preempted because the Main Street crossing was abnormally dangerous and Southwestern used inadequate warning devices to protect the crossing. The district court granted Southwestern's motion for summary judgment, holding that Bock's negligence claim was preempted by federal law.

The Supreme Court has held that when certain federal regulations issued by the Secretary of Transportation governing the protection devices to be placed at railroad grade crossings apply, see 23 C.F.R. § 646.214(b)(3)-(4) (1998), the federal regulations preempt state law tort claims pertaining to the maintenance of the railroad grade crossings. See CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 670 (1993). Since

3

Easterwood, our court has been quite clear that if federal funds have been expended for warning devices at a grade crossing, state law tort claims alleging negligence in the maintenance of the crossing are preempted. Consequently, the pivotal issue in this case is whether or not the cited regulations are applicable to the Main Street Crossing.

"Federal regulations are applicable if federal funds have been expended for the installation of the warning devices at the crossing. 'Federal funding is the touchstone of preemption in this area.'" Bryan, 154 F.3d at 903 (quoting Elrod v. Burlington Northern R.R. Co., 68 F.3d 241, 244 (8th Cir. 1995)). There is no dispute in this record that federal funds were used to install the crossbucks at the Main Street crossing. Accordingly, Bock's claim should be preempted. Nonetheless, Bock argues that his claim is not preempted because the crossbucks were inadequate in view of 23 C.F.R. § 646.214(b)(3). Under that regulation, according to Bock, the characteristics of the Main Street crossing mandate the use of automatic gates with flashing light signals. See § 646.214(b)(3)(i)(B) (indicating that adequate warning devices are to include flashing lights and automatic gates when the crossing involves multiple tracks and the movement of an approaching train might be obscured). We recently addressed and rejected an identical legal argument. In Bryan the widow of a driver killed in a collision with a train argued that her wrongful death action was not preempted even though federally funded crossbucks protected the crossing in question. The widow asserted, as does Bock in this appeal, that under the regulations, the characteristics of the crossing warranted an automatic gate. Bryan, 154 F.3d at 903. Despite this argument, we held that "once federal funds have been expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations." Id. at 904. Thus, it would appear that Bock's wrongful death action is preempted.

Factually, however, Bock's case differs from Bryan because prior to Phyllis Bock's accident, the relevant authorities made a determination to upgrade the Main Street crossing to a lights and gates configuration. According to Bock, this

4

determination proves, as a matter of law, the inadequacy of the Main Street crossing, and consequently, suspends or terminates the preemption of state tort actions. We disagree.

Preemption is not a water spigot that is turned on and off simply because a later decision is made to upgrade a crossing. As we noted above, our cases clearly hold that once a federally funded warning device is installed and operational—the crossbucks in this case—preemption occurs. See Bryan, 154 F.3d at 904; Elrod, 68 F.3d at 244; St. Louis Southwestern Ry. Co. v. Malone Freight Lines, Inc., 39 F.3d 864, 867 (8th Cir. 1994), cert. denied, 514 U.S. 1110 (1995). The fact that a better warning system is desirable is simply irrelevant. "[T]he issue is not what warning system the federal government determines to be necessary, but whether the final authority to decide what warning system is needed has been taken out of the railroad's and the state's hands under 23 C.F.R. § 646.214(b)(3) & (4)." Armijo v. Atchison, Topeka and Santa Fe Ry. Co., 87 F.3d 1188, 1192 (10th Cir. 1996). We hold, therefore, that federal law preempts Bock's wrongful death claim based on the adequacy of the warning devices installed at the Main Street crossing.

B.    Delayed Installation

Bock next argues that Southwestern negligently delayed the installation of the improved safety devices at the Main Street crossing. In other words, according to Bock, Southwestern is liable for failing to promptly install lights and gates after the determination to install such devices was made. Bock dedicates the majority of his brief on this topic to the question of whether such a cause of action exists under Arkansas law. We do not reach that question because we hold that Bock's negligent delay claim is also preempted by federal law.

Bock's argument is little more than an attempt to make an end run around the preemption doctrine. As we explained above, once preemption occurs, it is not

suspended or terminated by a subsequent governmental determination regarding the adequacy of the crossing. When, as here, a plaintiff brings a state tort cause of action for harm sustained at a railroad crossing that has federally funded, installed, and operational warning devices, that state cause of action is preempted. That another, improved warning system was later planned is simply irrelevant. See Armijo, 87 F.3d at 1192 ("The mere fact that the federal government has changed its opinion regarding what warning devices are needed at a particular crossing at some point after making a prior determination a lesser warning system is sufficient is of no real significance . . . ."). Whether Arkansas's common law recognizes a tort cause of action for negligent delay is likewise irrelevant because that cause of action would also be preempted. Due to preemption, the railroad was no longer duty-bound, in the tort sense, for causes of action based on the adequacy of the crossing safety devices. After the federally funded crossbucks were installed and operational, preemption absolved Southwestern of any state law obligation to upgrade the crossing sua sponte. Cf. Malone, 39 F.3d at 867 ("Before preemption, the public is protected by a railroad's state common-law duty of care. After installation of federally mandated warning devices, the public is protected by those devices."). Because Bock's negligent delay claim is founded on the premise that the then existing crossbucks inadequately protected the crossing, his claim is preempted. This case is markedly different from the situation presented in Malone. In that case, preemption had not occurred because the original federally funded warning devices were not yet installed at the crossing in question. See id. In this case they were.[2]

In sum, we hold that Bock's negligent delay claim is preempted.

---

[2] The Main Street crossing upgrade was not an "accelerated" project under 23 C.F.R. § 646.218. If it were, that regulation would have allowed up to two years from and after the project authorization date (September 9, 1991) for completion of the project. See § 646.218(e). Even though it was not "accelerated," the Main Street crossing was completed within seven months after authorization by the Arkansas Highway Department.

III.

Accordingly, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT