Oreatha POWERS, etc., Plaintiff,

v.

CSX TRANSPORTATION, INC.,
et al., Defendants.

No. CIV.A.99–0326 RV–S.

United States District Court,
S.D. Alabama,
Southern Division.

May 15, 2000.

---

Charles R. Godwin, Timothy J. Godwin, Atmore, AL, for plaintiff.

Brian P. McCarthy, Jerry A. McDowell, Mobile, AL, for defendant.

## ORDER ON MOTION TO RECONSIDER

VOLLMER, District Judge.

This matter is before the Court on the plaintiff's Motion to Reconsider Entry of Partial Summary Judgment. (Doc. 24) The plaintiff has filed a principal brief (Doc. 25) and five supplemental briefs in support of her motion. (Docs.30, 32, 33, 35, 37) Defendants CSX Transportation, Inc. ("CSX"), G.A. Owens and C.M. Cooper (collectively, the "CSX defendants") have filed five briefs in opposition to the plaintiff's motion to reconsider. (Docs.29, 31, 34, 36, 42) The CSX defendants have also filed a motion to strike as unauthenticated and as hearsay certain government documents submitted by the plaintiff. (Doc. 38)[1] For the reasons set forth below, the plaintiff's motion to reconsider is granted. Upon reconsideration, the CSX defendants' motion for partial summary judgment is granted in part and denied in part.

Terrence Terrell Rogers died early on November 13, 1997, several hours after the vehicle he was driving was struck by a train owned and operated by CSX. Rogers was struck as he attempted to traverse the CSX track at the Martin Luther King, Jr. crossing in Atmore, Alabama.

The plaintiff filed this action in the Circuit Court of Escambia County in November 1997. The original and first amended complaints alleged only state law causes of action for negligence and wantonness against the CSX defendants and co-defendant City of Atmore. In July 1998, the CSX defendants filed a motion for partial summary judgment "to the extent that any claims . . . seek to predicate liability upon the defendants based upon the alleged inadequacy of the warnings at the crossing." The CSX defendants argued that any such claims were preempted pursuant to federal regulations appearing at 23 C.F.R. §§ 646.214(b)(3) and (4). On October 2, 1998, the state court recorded a docket entry granting the CSX defendants' motion for partial summary judgment but filed no opinion explaining its ruling. On March 9, 1999, the plaintiff filed a Second Amended Complaint adding ADOT and Dykes T. Rushing, its office engineer, as defendants and asserting federal causes of

---

1. The CSX defendants' motion to strike is granted for the reasons set forth in their mo-    tion.

action for the first time. (Doc. 40) The defendants timely removed this action to federal court. The plaintiff thereafter filed her motion to reconsider the state court's grant of partial summary judgment.

## DETERMINATIONS OF UNCONTROVERTED FACT

In 1980, CSX and the State of Alabama, acting through the Alabama Department of Transportation ("ADOT"), "entered into a Master Agreement providing for the installation of automatic traffic control systems or other protective devices at various rail-highway crossings" in the state. (CSX 400480) The Master Agreement was amended in 1981. (*Id.*)

At the time Rogers was killed, no automatic gate or other active warning device guarded the crossing. Instead, passive warning devices consisting of crossbucks, stop signs and various road markings were in place.[2] Certain of these passive warning devices were installed by CSX in 1983, pursuant to its agreement with ADOT. Approximately ninety percent of the funding for these passive devices came from the Federal Highway Administration ("FHWA"). (Rushing Affidavit & Exhibits; Pickett Supplemental Affidavit)

In July 1993, the City of Atmore and the State of Alabama, again acting through ADOT, entered a Resolution and Project Agreement contemplating the installation of additional railroad signals, bell, gates and motion detectors by CSX at the Martin Luther King, Jr. crossing. (Doc. 25, Ex. 3) CSX developed an estimate of the cost of this work in March 1995. (Doc. 25, Ex. 4)

On April 18, 1995, the State and CSX entered a Supplemental Agreement extending the terms of the Master Agreement to cover CSX's installation of "two standard signals with 12″ deep dish lenses, one 20′ gate, one 21″ [sic] gate, two bells and motion detector" at the Martin Luther King, Jr. crossing. (CSX 400479–82) CSX was to perform the work subject to subsequent reimbursement of its costs. (CSX 400462)

By letter dated November 29, 1995, ADOT notified CSX that "[t]his letter is your authority to proceed with the work and to bill the State for actual cost as provided for in the agreement." (Doc. 25, Ex. 7)

On December 7, 1995, the FHWA executed a Federal–Aid Project Agreement referencing an "authorization to proceed with the project" at the Martin Luther King, Jr. crossing and noting an "effective date of authorization" of July 10, 1995. The agreement obligated the FHWA to provide ADOT up to $82,620.00 as its 90% share of the cost of the project. (Doc. 25, Ex. 5)

As of November 12, 1997, ADOT had received $24,905.21 from the FHWA towards the cost of the Martin Luther King, Jr. crossing project. (Pickett Affidavit & Exhibit) However, installation of the active warning devices called for by the project had not begun before Rogers' death.[3] CSX installed crossing gates within two

---

2. Active warning devices, whether automatic or manual, "display to motorists positive warning of the approach or presence of a train." 23 C.F.R. § 646.204. Passive warning devices "indicate the presence of a crossing but ... do not change aspect upon the approach or presence of a train." *Id.* "Crossbucks" are "the familiar black-and-white X-shaped signs that read 'RAILROAD CROSSING.'" *Norfolk Southern Railway Co. v. Shanklin*, — U.S. ——, 120 S.Ct. 1467, 1472, 146 L.Ed.2d 374 (2000).

3. The CSX defendants state that "the evidence also proves that work toward upgrading the crossing had commenced prior to the subject accident," (Doc. 31 at 2), but they cite to no such evidence. The plaintiff denies that installation had begun, and even the CSX defendants concede that installation of the active warning devices was not complete on the night Rogers was killed. As discussed in text, any factual dispute in this regard does not affect the resolution of the pending motions.

weeks after his death. (Davison Dep. at 27)

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper pursuant to 28 U.S.C. § 1391(b).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 999 (11th Cir.1992) (internal citations and quotations omitted).

**Statutory and Regulatory Provisions.**

In 1970, Congress enacted the Federal Railroad Safety Act ("FRSA"). The FRSA contains an express preemption clause:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106.

In 1973, Congress passed the Highway Safety Act of 1973 ("HSA"). Among other provisions, the HSA made federal funds available to states for the "cost of construction of projects for the elimination of hazards of railway—highway crossings." 23 U.S.C. § 130(a).

The Secretary of Transportation subsequently promulgated regulations under the HSA, including those identifying requirements for federal fund participation in grade crossing improvements. Those regulations are set forth in full below:

(3)(i) Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

(A) Multiple main line railroad tracks.

(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F) A diagnostic team recommends them.

(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable. (4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

23 C.F.R. §§ 646.214(b)(3), (4).

Parties' Positions.

The Supreme Court has held that, "when they are applicable," the Secretary of Transportation's regulations at 23 C.F.R. §§ 646.214(b)(3) and (4) preempt state tort law. *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 670, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The CSX defendants argue that the plaintiff's claims are preempted under these regulations because federal funds participated in the installation of passive warning devices at the Martin Luther King, Jr. crossing in 1983. The plaintiff responds that the crossing does not fall within subsection (b)(4) concerning passive warning devices and that preemption cannot apply absent installation of active warning devices under subsection (b)(3). The plaintiff further argues that neither subsection preempts her claim for negligent delay in installing active warning devices following the FHWA's 1995 authorization of federal funds to install such devices.

Preemption Principles.

"[P]re-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX v. Easterwood,* 507 U.S. at 664, 113 S.Ct. 1732 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Congress has passed no law that itself preempts any state law concerning grade crossing safety. Instead, Congress has declared that preemption can arise only when "the Secretary of Transportation prescribes a regulation or issues an order *covering the subject matter* of the state requirement." 49 U.S.C. § 20106 (emphasis added). The necessary threshold relationship between the federal regulation and the state law is shown "only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *CSX v. Easterwood,* 507 U.S. at 664, 113 S.Ct. 1732 (emphasis added). The regulations must "establis[h] an alternative scheme of duties incompatible with existing [state] negligence law." *Id.* at 670, 113 S.Ct. 1732.

The language of Section 20106, and its placement between two express savings clauses, "displays considerable solicitude for state law" and imposes a "relatively stringent standard" for preemption. *Id.* at 665, 668, 113 S.Ct. 1732. Moreover, an overarching "presumption against preemption" retains independent force as an additional caution against finding preemption in a given case. *Id.* at 668, 113 S.Ct. 1732 (relying on both the statutory language and the presumption against preemption to reject a preemption argument). The Supreme Court in *Easterwood* employed this restrictive view of preemption to reject arguments that certain regulations concerning railroad safety promulgated by the Secretary of Transportation preempt state law. *See id.* at 667–70, 113 S.Ct. 1732.

The Eleventh Circuit has recognized that the determination as to whether the Secretary's regulations preempt a particular state law claim must be made on an individualized basis informed by the preemption principles outlined above. In *Michael v. Norfolk Southern Railway Co.,* 74 F.3d 271 (11th Cir.1996), the Court held that Sections 646.214(b)(3) and (4) would preempt a claim for "defective design" but that the same regulations would not preempt claims for "negligent ... construction" or for "negligent maintenance of the crossing and for failure to warn the public of the defective nature of the crossing." *Id.* at 273.

In summary, this Court's analysis must focus on whether it was Congress' "clear and manifest purpose" to preempt the sorts of claims asserted by the plaintiff. At a minimum, Sections 646.214(b)(3) and (4) must "substantially subsume" state law on the subject of the plaintiff's claims.

**Claims at Issue.**

The plaintiff alleges that the defendants acted negligently or wantonly in fifteen particulars. (Doc. 40 at 11–12) The CSX defendants' state court motion for partial summary judgment was limited to those claims that "seek to predicate liability upon the defendants based upon the alleged inadequacy of the warnings at the crossing." [4] The CSX defendants identify these claims as those alleged by the plaintiff in subparagraphs C and N of Counts One and Two of the Second Amended Complaint: (1) failure to install and maintain lighted railroad crossing gates synchronized with highway traffic signals; and (2) failure to install mandated active warning devices in compliance with federal regulations within a reasonable time following their authorization. (Doc. 29 at 27)

**Application of Preemption Principles.**

**1. Failure to install active warning devices.**

The plaintiff argues that the CSX defendants had an independent state law duty to select and install active warning devices at the Martin Luther King, Jr. crossing. However, Sections 646.214(b)(3) and (4) "establish a standard of adequacy that determine[s] the devices to be installed" at grade crossings. *CSX v. Easterwood,* 507 U.S. at 671, 113 S.Ct. 1732. Accordingly, they "cover the subject matter" of warning device selection and, "when they are appli-

cable, state tort law is preempted." *Id.* at 670, 113 S.Ct. 1732.

Sections 646.214(b)(3) and (4) are "applicable" when three requirements are satisfied: (1) the FHWA "approves a crossing improvement project"; (2) the improvements are "actually installed and operating"; and (3) "federal funds participate in the crossing improvement project." *Norfolk Southern Railway Co. v. Shanklin,* — U.S. ——, 120 S.Ct. 1467, 1474, 1476, 146 L.Ed.2d 374 (2000). The plaintiff concedes that passive warning devices were installed at the Martin Luther King, Jr. crossing, with FHWA authorization and participation of federal funds, in 1983. Thus, state tort law purporting to place an independent duty on the CSX defendants to select and install active warning devices is preempted. The plaintiff nevertheless offers several arguments why her claim should not be preempted.

First, the plaintiff argues that preemption never arose in 1983 to begin with because the FHWA, although it authorized federal funding of the passive warning devices then installed, did not expressly find that the crossing was a subsection (b)(4) crossing or that passive devices would adequately protect highway traffic. In fact, the plaintiff contends, the installation of passive warning devices was part of a widespread, stop-gap "minimum standards" push by the FHWA divorced from any consideration of the adequacy of the measures taken.

The plaintiff's argument was rejected by the Eleventh Circuit in *Ingram v. CSX Transportation, Inc.,* 146 F.3d 858 (11th Cir.1998), in which the Court held that, given the FHWA's authorization of federal funds to install passive devices, "we

---

**4.** The CSX defendants' motion for partial summary judgment also sought dismissal of those claims that "seek to predicate liability ... on the basis that the train was being operated at an excessive rate of speed." The plaintiff has not moved for reconsideration of this facet of the state court's ruling. *See CSX v. Easterwood,* 507 U.S. at 673–75, 113 S.Ct. 1732 (holding such a claim to be preempted).

It is unnecessary at this juncture to determine which of the plaintiff's fifteen alleged particulars are thereby eliminated or limited. *See Michael v. Norfolk Southern Railway Co.,* 74 F.3d at 274 (while "pure" excessive speed claims are preempted, it remains unanswered whether all related claims are preempted as well).

presume that the Secretary approved of those devices" and further held that "this approval eliminates the need to consider whether section (b)(3) conditions [in fact] existed." *Id.* at 865. *Ingram* alone would require this Court to reject the plaintiff's argument, but the Supreme Court as well has recently repudiated the Sixth Circuit's view that preemption cannot arise unless the FHWA "affirmatively approved the particular devices installed at the crossing as adequate for safety." *Norfolk Southern v. Shanklin,* 120 S.Ct. at 1473, 1475–76.[5]

The plaintiff next argues that, due to changed conditions since 1983, the Martin Luther King, Jr. crossing later satisfied one or more of the regulatory criteria for a subsection (b)(3) crossing. In particular, she argues that the State of Alabama's execution of a Resolution and Project Agreement in July 1993 contemplating installation of various active warning devices, following the State's "approv[al][of] the final recommendations made in a survey of such railroad crossing improvements," (Doc. 25, Ex. 3), shows that "[a] diagnostic team recommend[ed]" automatic gates with flashing light signals under Section 646.214(b)(3)(i)(F). The plaintiff argues that, once the crossing became in fact a subsection (b)(3) crossing, subsection (b)(3) warning devices had to be in place for preemption to continue.

The plaintiff's argument has been flatly rejected by the Supreme Court. In *Norfolk Southern v. Shanklin,* the plaintiff argued that preemption should not apply because, even though federal funds were used to install passive warning devices, the crossing in fact "presented several of the factors listed in § 646.214(b)(3)." 120 S.Ct. at 1476. The Supreme Court responded that preemption arises under the

Secretary's regulations, not because the FHWA complies with its own standards concerning the devices to be installed, but because, by approving and funding grade crossing improvements, the FHWA replaces state common law standards for measuring the adequacy of warning devices with its own regulations. "It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) ... that pre-empts state tort actions." *Id.*

Because it is the identity of the decision-maker and not the accuracy of the decision that determines preemption, it simply does not matter—for preemption purposes—whether the FHWA should have approved additional or superior warning devices to begin with or whether, given changing conditions, the FHWA's earlier approval appears unwise or outdated. In either event, it is the FHWA, and not the railroad, that is charged with the decision, and the railroad cannot be faulted for a poor decision that was not its own to make.[6] "Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question." *Norfolk Southern v. Shanklin,* 120 S.Ct. at 1476.

Nor did *Shanklin* announce a new rule. The CSX defendants cite several opinions—including an unpublished order of this Court—employing the same analysis and reaching the same result as did the Supreme Court in *Shanklin. See, e.g., Armijo v. Atchison, Topeka & Santa Fe Railway Co.,* 87 F.3d 1188, 1192 (10th

**5.** The Supreme Court rejected the "minimum protection" program versus "priority" or "hazard" program distinction as incompatible with the language of Sections 646.214(b)(3) and (4) and as contradictory to the FHWA's own construction of the regulations as represented to the Court in *CSX v. Easterwood. See* 120 S.Ct. at 1475.

**6.** The railroads' role in the selection process under Sections 646.214(b)(3) and (4) is limited to participating in diagnostic teams making recommendations as to active devices under subsection (b)(3) and submitting proposals for approval by the Secretary under subsection (b)(4). *CSX v. Easterwood,* 507 U.S. at 671, 113 S.Ct. 1732.

Cir.1996)(even though the FHWA arguably approved active warning devices after passive warning devices had been installed with federal funding, "the issue is not what warning system the federal government determines to be necessary, but whether the final authority to decide what warning system is needed has been taken out of the railroad's and the state's hands").

The plaintiff offers several arguments to distinguish her situation from *Shanklin* and prior opinions, but her efforts are unavailing. First, the plaintiff suggests her case is different because the FHWA itself, by approving the active warning devices proposed for the crossing in 1995, recognized that the crossing required such devices and effectively withdrew its 1983 approval of passive devices. Assuming this is a proper interpretation of the FHWA's action, the FHWA did not thereby return to the railroad the final authority for selecting appropriate warning devices. On the contrary, the plaintiff's argument simply reflects that the FHWA made one decision about warning devices in 1983 and replaced it with another decision in 1995, but that it remained at all times the decision-maker. *See, e.g., Bock v. St. Louis Southwestern Railway Co.*, 181 F.3d 920, 921, 923 (8th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1718, 146 L.Ed.2d 640 (2000)(that FHWA approved upgrades did not suspend preemption because the federal government remained the decision-maker).

As a variation on this theme, the plaintiff argues that, because the installation of active warning devices entailed the physical removal of the preexisting crossbucks and stop signs, the FHWA's 1995 approval of the active warning devices constituted an "abandonment" of the earlier project. The Supreme Court in *CSX v. Easterwood* found no preemption when funds set aside for a particular project were transferred to other projects after the original project was "scotched," 507 U.S. at 672–73, 113 S.Ct. 1732, and the Tenth Circuit relied on *Easterwood* for the proposition that pre-

emption may be suspended or terminated if the FHWA "affirmatively abandons" the project by withdrawing funding. *Armijo v. Atchison, Topeka & Santa Fe,* 87 F.3d at 1192. "Abandonment," however, does not arise simply because the FHWA approves new warning devices that supplant existing ones, but upon the FHWA's withdrawal of funding for the project. Because the FHWA has not withdrawn funding for the passive devices installed in 1983, it cannot have "abandoned" the project.

Finally, the plaintiff argues that, because Section 646.214(b)(3) identifies adequate warning devices "on any project" in which federal funds participate, preemption at any given crossing must be satisfied on a project-by-project basis. Because all interested parties treated and described the active warning devices as a single "project," and because preemption does not arise until the approved warning devices are "actually installed and operating," *Norfolk Southern v. Shanklin,* 120 S.Ct. at 1474, the plaintiff concludes that CSX's failure to install the active warning devices before Rogers' death precludes the CSX defendants from invoking preemption.

This argument fails because, as with the plaintiff's other arguments, it does not demonstrate that the FHWA returned to CSX final authority to select appropriate warning devices. Regardless of how many times the FHWA approves additional or replacement warning devices at a crossing, it is still the FHWA making the selection decision.

In summary, the installation of passive warning devices at the Martin Luther King, Jr. crossing in 1983, with federal approval and funding, transferred to the FHWA the authority to decide what warning devices should be utilized at the crossing, and the plaintiff's claim based on an independent state law duty on the CSX defendants to select adequate warning devices is preempted.

## 2. Failure to timely install active warning devices following federal authorization.

■ As noted previously, the plaintiff's claim for negligent or wanton delay in installing active warning devices after they had been approved by the FHWA[7] cannot be preempted unless Sections 646.214(b)(3) and (4) "substantially subsume" state law concerning negligent delay in installing grade crossing improvements. As discussed below, the regulations do not do so.[8]

The Court's analysis must of course begin with the regulations themselves. Section 646.214 is entitled, "Design," a term that does not connote any intent to regulate installation, much less the timeliness of installation. Similarly, subsection (b)(3) is entitled, "Adequate warning devices," a phrase addressing the identification and quality of such devices but not their installation.

Nor does the text of Sections 646.214(b)(3) and (4) set forth any requirements for the timely installation of approved warning devices. Indeed, it contains only two references to installation. The first simply restricts the scope of the regulations' provisions to projects as to which federal funds "participate in the installation" of warning devices. 23 C.F.R. § 646.214(b)(3)(i). The second simply notes that, when automatic gates with flashing light signals are not required under subsection (3), the type of warning device "to be installed" is subject to the FHWA's approval. Id. § 646.214(b)(4). The regulatory language merely expresses the obvious expectation that approval of grade crossing improvements is not an academic exercise but that actual installation is contemplated; it does nothing, however, to suggest an intent to "substantially subsume" state law concerning the timely installation of warning devices following their approval by the FHWA. The CSX defendants have not identified any regulatory language, or provided any argument, supporting a contrary conclusion.

While the language of the regulations themselves demonstrates that the plaintiff's claim is not preempted, this conclusion is bolstered by analysis of legislative and regulatory intent. Congress' purpose in passing the FRSA was to "promote safety in all areas of railroad operations and to reduce railroad-related accidents." 45 U.S.C. § 421 (repealed).[9] In addition, Congress has authorized the Secretary to order a railroad carrier to install a signal system, provided that the order allows the carrier a "reasonable time to complete the installation." 49 U.S.C. § 20502(a)(1). Although Section 20502 does not directly apply to this case because the Secretary has issued no such order, the provision clearly reflects Congress' intent that railroads not unduly delay implementation of grade crossing improvements once the Secretary has approved them.

The CSX defendants have identified no regulatory time limits on a railroad's installation of federally approved warning devices. Thus, if Sections 646.214(b)(3) and (4) were construed to preempt negligent delay claims, railroads could indefinitely delay installation of additional warning devices approved by the FHWA with— as in this case—catastrophic effects on the

---

7. The FHWA's authorization of federal funding suffices as a showing of approval. *Ingram v. CSX Transportation, Inc.,* 146 F.3d 858, 865 (11th Cir.1998). The CSX defendants concede that the FHWA approved the installation of active warning devices in 1995. (Doc. 29 at 4, 7)

8. The existence and scope of a state-law duty to timely install federally approved warning devices is not before the Court, and the Court expresses no opinion concerning these issues.

The sole ground of the CSX defendants' motion for partial summary judgment was preemption, and the Court herein addresses only that issue.

9. Section 421 was repealed as part of Congress' 1994 recompilation of transportation laws into Title 49. The statement of congressional purpose is now codified, substantively unchanged, at 49 U.S.C. § 20101.

very people Congress intended to protect. The CSX defendants have not articulated, and the Court cannot fathom, any set of circumstances under which such a result could be consonant with Congress' purpose to "promote safety . . . and to reduce railroad-related accidents."[10] Nor has any reason been offered or discovered explaining why the Secretary would promulgate a regulation with the precise effect of frustrating Congress' fundamental purpose.

Eleventh Circuit precedent provides further support for the proposition that Sections 646.214(b)(3) and (4) do not "substantially subsume" the subject matter of the installation of warning devices following approval by the FHWA. In *Michael v. Norfolk Southern Railway Co.*, 74 F.3d 271 (11th Cir.1996), the FHWA approved installation of, inter alia, a 28–foot automatic gate arm. The railroad installed a shorter arm but contended the FHWA had approved the modification. The *Michael* Court held that, if the railroad acted without FHWA approval, the plaintiff could pursue a claim for "negligent . . . construction." *Id.* at 273. In *Ingram v. CSX Transportation, Inc.*, 146 F.3d 858 (11th Cir.1998), the Court noted that a claim for "negligen[t] install[ation]" is not preempted by Sections 646.214(b)(3) and (4). *Id.* at 866. The CSX defendants have not explained how a claim for negligent failure to install or construct could be preempted while a claim for negligent installation or construction is not.

The Supreme Court has twice addressed the scope of Sections 646.214(b)(3) and (4). Although neither opinion directly addressed a negligent delay claim, both described the "substantially subsume" standard, and applied it to Sections 646.214(b)(3) and (4), in terms reflecting that these provisions cannot plausibly be read to preempt state law claims for negligent delay.

In *CSX v. Easterwood*, the Court equated "covering the subject matter of state law" with "establishing an alternative scheme of duties incompatible with existing [state] negligence law." 507 U.S. at 670, 113 S.Ct. 1732 (emphasis added). To establish an alternative scheme of duties, the regulations must at least "establish requirements" or "provid[e] . . . a prescription," and not merely a description, of the parties' respective responsibilities. *Id.* at 669, 671, 113 S.Ct. 1732. As noted above, Sections 646.214(b)(3) and (4) do not purport to require, prescribe or otherwise establish a scheme of duties concerning the timely installation of warning devices approved by the FHWA.

The Supreme Court's analysis of Sections 646.214(b)(3) and (4) similarly fails to support the CSX defendants' preemption argument. "Sections 646.214(b)(3) and (4) therefore establish a standard of adequacy that '*determine[s] the devices to be installed*' when federal funds participate in the crossing improvement project." *Norfolk Southern v. Shanklin*, 120 S.Ct. at 1474 (quoting *CSX v. Easterwood*, 507 U.S. at 671, 113 S.Ct. 1732)(emphasis added). The Court's language encompasses within the scope of Sections 646.214(b)(3) and (4) the selection ("determin[ation]") of appropriate devices but not the future installation ("to be installed") of the devices selected. Similarly, the Court has held that the regulations "*determin[e] the type of warning device* that is 'adequate' under federal law," 120 S.Ct. at 1474 (emphasis added), language denoting the selection of appropriate devices but not their installation. The *Easterwood* Court explained that it is the Secretary's determination of the devices to be installed, and the limitation of the railroads' participation in that selection process, that "cover[s] the subject matter of state law." 507 U.S. at 671, 113 S.Ct.

---

10. *Cf. St. Louis Southwestern Railway Co. v. Malone Freight Lines, Inc.*, 39 F.3d 864, 867 (8th Cir.1994), *cert. denied*, 514 U.S. 1110, 115 S.Ct. 1963, 131 L.Ed.2d 854 (1995) ("The

view that preemption runs from the time of federal approval is inconsistent with the FRSA's goal of promoting safety at railroad crossings.").

1732.[11]

Furthermore, the *Shanklin* Court made explicit what was implicit in *Easterwood:* that before preemption can arise, the federally approved warning devices must be "actually installed and operating." 120 S.Ct. at 1474. The CSX defendants have not explained how a state law claim for failure to install federally approved devices can be preempted when preemption does not arise until the approved devices are installed.

The CSX defendants in brief reference another regulatory provision and one statutory section. They do not expressly assert that these provisions constitute alternative sources for preemption of the plaintiff's negligent delay claim [12] and, as discussed below, any such assertion would be meritless.

First, the CSX defendants refer to 23 C.F.R. § 646.218, which sets forth a simplified procedure for accelerating grade crossing improvements. This regulation concludes as follows:

> Work programmed and authorized under this simplified procedure should include only that which can reasonably be expected to reach the construction stage within one year and be completed within two years after the initial authorization date.

*Id.* § 646.218(e).

By its terms, this regulation addresses only accelerated projects, and the CSX defendants expressly deny that this was an accelerated project. (Doc. 34. at 6) Even with respect to accelerated projects, the regulation merely sets forth suggested criteria the agency "should" employ in deciding whether to authorize a project under the simplified procedure. Moreover, the regulation contemplates only a probability that the work will be completed within two years, not an absolute certainty. The regulation imposes no obligation on the railroad to complete installation within two years nor any sanction for failing to do so. Such a vague reference to time can scarcely be said to "substantially subsume" the subject matter of timely installation or to "establis[h] an alternative scheme of duties incompatible with existing [state] negligence law."

The CSX defendants also cite 49 U.S.C. § 20502, which authorizes the Secretary to order a railroad carrier to install a "signal system" within a "reasonable time." However, Section 20106 identifies the source of preemptive rules as regulation, not statute. Moreover, the Secretary has not issued an order for CSX to install a signal system.

In summary, Sections 646.214(b)(3) and (4) "substantially subsume" the subject matter of the *selection* of adequate grade crossing warning devices, but they do not substantially subsume the subject matter of timely *installation* of such devices once selected. Because the regulations do not "substantially subsume" the subject matter

---

**11.** While the *Easterwood* and *Shanklin* opinions also used the term "installation" in describing the scope of Sections 646.214(b)(3) and (4), they did not use the word in the sense of the physical act of installing the devices, much less the timeliness of such installation. For example, the *Easterwood* Court described the regulations as "establish[ing] requirements as to the installation of particular warning devices," 507 U.S. at 670, 113 S.Ct. 1732, but it is clear from the context that the Court employed the term to denote the selection of devices to be installed. To the extent the Supreme Court's language may have been imprecise, it furnishes no basis for concluding that Sections 646.214(b)(3) and (4) substantially subsume state law concerning timely installation of federally approved warning de-

vices. *Cf. Michael v. Norfolk Southern,* 74 F.3d at 273 n. 3 (although the *Easterwood* Court spoke of the "maintenance" of grade crossings, *see, e.g.,* 507 U.S. at 664, 113 S.Ct. 1732, the term was used in the sense of " 'the absence of proper warning devices' ").

**12.** Instead, they suggest it provides a guideline for determining what constitutes a reasonable time for installing federally approved warning devices. As noted previously, issues concerning the existence and scope of a state-law duty of timely installation are not properly before the Court as they exceed the scope of the CSX defendants' motion for partial summary judgment.

of the plaintiff's claim, that claim cannot be preempted.

### Defendants' Argument.

The CSX defendants' argument concerning the plaintiff's negligent delay claim addresses neither the foregoing legal principles nor the relevant statutory and regulatory language. Instead, the CSX defendants simply argue that preemption arose in 1983, when passive warning devices were installed with federal funds at the Martin Luther King, Jr. crossing, and that it extends uninterrupted to the present day. Alternatively, they argue that a second preemption arose prior to Rogers' death when the FHWA transferred federal funds to ADOT in connection with the anticipated installation of active warning devices at the Martin Luther King, Jr. crossing.[13]

The CSX defendants thus view the only preemption issue concerning the plaintiff's negligent delay claim as one of temporal duration.[14] The threshold issue with respect to the plaintiff's negligent delay claim, however, is not whether preemption survives but whether it ever existed to begin with. The CSX defendants cannot avoid the issue of how *far* preemption *extends* by focusing instead on how *long* it *lasts*.

The preemption that arose in 1983 extends only to those areas "substantially subsumed" by Sections 646.214(b)(3) and (4). As discussed above, these sections do substantially subsume state law concerning the selection of adequate warning devices, but they do not substantially subsume state law concerning timely installation of federally approved warning devices. Thus, while the preemption that arose in 1983 precludes the plaintiff from arguing that the passive warning devices then approved are inadequate because the FHWA approved active warning devices in 1995, it does not preclude her from arguing that the CSX defendants negligently or wantonly failed to install the active warning devices in a timely manner following their 1995 approval.[15]

Nor do the CSX defendants' authorities establish that Section 646.214(b)(3) and (4) preempt claims for negligent delay. The CSX defendants first cite *Armijo v. Atchison, Topeka & Santa Fe Railway Co.*, 87 F.3d 1188 (10th Cir.1996), but the plaintiff in that case asserted no claim that the railroad negligently delayed in installing federally approved upgrades. Rather, the plaintiff in *Armijo* claimed that the report of a diagnostic team pursuant to Section 646.214(b)(3)(i)(F) recommending that an active warning system be put in place "somehow suspended the preemption of

---

13. The latter argument is based on cases from other circuits holding that preemption arises upon the FHWA's agreement to provide funding or upon its provision of a threshold level of funds, regardless of whether physical installation of the improvements has been accomplished. *See, e.g., Armijo v. Atchison, Topeka & Santa Fe*, 87 F.3d at 1190. In *Norfolk Southern v. Shanklin*, however, the Supreme Court explicitly stated that preemption cannot apply when "the warning devices for which federal funds had been obtained were never actually installed" and that preemption arises "once the FHWA has funded the crossing improvement *and* the warning devices are *actually installed and operating.*" 120 S.Ct. at 1474 (emphasis added).

14. "[P]reemption that occurred in 1983 was not suspended, abrogated, removed or negated as a result of the subsequent decision to install lights and gates at the crossing or by

the time required to install said warning devices. That is the only issue in this case ...." (Doc. 34 at 3)

15. The Eleventh Circuit has repeatedly made similar distinctions between claims that are preempted and those that are not. *See Ingram v. CSX*, 146 F.3d at 866 (a claim for defective design is preempted, but a claim for negligent installation is not); *Michael v. Norfolk Southern*, 74 F.3d at 273 (a claim for defective design is preempted, but claims for negligent construction, negligent maintenance and negligent failure to warn are not); *id.* at 274 ("pure" excessive speed claims are preempted, but related claims may not be); *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1554 (11th Cir.1991), *aff'd*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)(a claim for excessive vegetation is only "partially pre-empted").

state law until federal funds participated in some significant way in the installation of the active warning devices." 87 F.3d at 1192. In short, the plaintiff did not attempt to avoid preemption by arguing that the *railroad* had failed to perform some duty lying *beyond* the reach of preemption, but only that the *FHWA* had done something that *suspended* preemption.

The CSX defendants' reliance on this Court's unpublished opinion in *Gandy v. CSX Transportation, Inc.*, CA No. 1:97–0809–RV–M, is similarly misplaced. The plaintiff in *Gandy* alleged that CSX negligently or wantonly "failed to provide crossing arms/gates at the railroad crossing," (Doc. 18 at 3; Doc. 31 at 2), but he made no reference to any negligent delay by CSX in installing safety devices approved by the FHWA. As in *Armijo*, the plaintiff opposed summary judgment by arguing that preemption does not apply until federal funds "participate" in the installation of the additional devices, (Doc. 27), again with no suggestion that CSX negligently delayed in installing the devices.

Of CSX's authorities, only *Bock v. St. Louis Southwestern Railway Co.*, 181 F.3d 920 (8th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1718, 146 L.Ed.2d 640 (2000), actually addressed a claim for the railroad's negligent delay in installing federally approved devices. The *Bock* Court found the plaintiff's negligent delay claim to be preempted; however, it did so by focusing on the *duration* of preemption while essentially ignoring the threshold issue of the *scope* of preemption. With respect to the latter, the *Bock* Court simply announced that preemption extends to all causes of action "based on the adequacy of the crossing safety devices" or "founded on the premise that the then existing [devices] inadequately protected the crossing." 181 F.3d at 923.

The *Bock* opinion contains no reference to, much less analysis or application of, the purpose of the FRSA, the presumption against preemption, Congress' "relatively stringent standard" for preemption under the FRSA, the Supreme Court's equation of that standard with "substantially subsuming" the subject matter of state law, the Supreme Court's application of that standard, or even the language of Sections 646.214(b)(3) and (4). Absent consideration of these critical matters, *Bock*'s bare conclusion that Sections 646.214(b)(3) and (4) preempt state law claims for negligent delay cannot be afforded significant persuasive value.

## CONCLUSION

With respect to the plaintiff's claim as asserted in paragraph 15C of Counts One and Two of the Second Amended Complaint that the CSX defendants negligently or wantonly failed to install additional warning devices, there is no genuine issue of material fact and the CSX defendants are entitled to partial judgment as a matter of law. With respect to this claim, the CSX defendants' motion for partial summary judgment is **granted.**

With respect to the plaintiff's claim as asserted in paragraph 15N of Counts One and Two of the Second Amended Complaint that the CSX defendants negligently or wantonly failed to install certain active warning devices within a reasonable time following their authorization by the FHWA, the CSX defendants are not entitled to partial judgment as a matter of law. With respect to this claim, the CSX defendants' motion for partial summary judgment is **denied.**

This disposition does not adjudicate all of the claims of the plaintiff against the CSX defendants. Similarly, it does not adjudicate the rights and liabilities of all the parties. Accordingly, under Federal Rule of Civil Procedure 54(b), the Court finds that entry of a final judgment at this time is inappropriate, and judgment will be entered by separate document as required by Federal Rule of Civil Procedure 58 following the resolution of all claims as to all parties.