Kelli SMALLWOOD, Plaintiff,

v.

ILLINOIS CENTRAL RAILROAD COMPANY and The Mississippi Department Of Transportation, Defendants.

No. CIV.A.3:01–CV–561BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 15, 2002.

Pat M. Barrett, Jr., Barrett Law Offices, Lexington, Cynthia H. Speetjens, Frazer Davidson, P.A., Jackson, for Kelli Smallwood, plaintiffs.

Charles T. Ozier, Chad M. Knight, Wise, Carter, Child & Caraway, Susan L. Runnels, Heidelberg & Woodliff, Jackson, for Illinois Central Railroad Company, Mississippi Department of Transportation, defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of Plaintiff to Remand. The Court has considered the motion, response, rebuttal, attachments to each, and supporting and opposing authority and finds that the motion is not well taken and should be denied.

### I. Factual Background and Procedural History

On June 23, 2000, Plaintiff was injured when a locomotive operated by Defendant Illinois Central Railroad Company ("IRC") struck the automobile in which she was traveling. The incident occurred at Mississippi Department of Transportation ("MDOT") railroad crossing number 305451Y located at Highway 469, Florence, Mississippi.

On June 21, 2001, Plaintiff filed a lawsuit in the First Judicial District of the Circuit Court of Hinds County, Mississippi, alleging claims of negligence against IRC and MDOT. At the time of the accident, the railroad crossing was equipped with automatic, flashing warning lights which had been installed using federal funds. Plaintiff first alleges negligence on the part of the MDOT arising from its failure to install automatic gates at the subject crossing despite its knowledge that the crossing was "unreasonably dangerous and extraordinarily hazardous." Complaint, ¶ 8. This "failure to install gates" claim, which challenges the adequacy of the warning devices at the subject railroad crossing, is only alleged against the MDOT. Plaintiff next alleges that IRC "received authorization and direction from the MDOT to construct gates at the subject crossing on or about December 13, 1999," the cost for which was to be paid by the MDOT. *Id.,* ¶ 11. Plaintiff further alleges that despite this authorization, direction and funding, the automatic gates were not installed prior to the date on which she was injured. Based, in part, on these assertions, Plaintiff alleges a "negligent delay in gate installation" claim against both IRC and the MDOT.

On July 20, 2001, Defendant IRC removed the case to federal court pursuant to 28 U.S.C. § 1441 on the basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332. For the purpose of diversity analysis, Defendant IRC is a corporate citizen of, and has its primary place of business in, the State of Illinois. Plaintiff and Defendant the MDOT are both citizens of the State of Mississippi. IRC, however, contends that Plaintiff has fraudulently joined the non-diverse Defendant and, therefore, the Court may properly assert federal subject matter jurisdiction over this case. IRC further contends that

although the state court complaint does not specify the total amount of damages sought by Plaintiff, that Plaintiff seek greater than the requisite amount of $75,000.00. Plaintiff does not dispute this assertion. The Motion of Plaintiff to Remand is presently before the Court.

## II. Fraudulent Joinder Standard

■ Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989) (holding that the "removing party bears the burden of establishing federal jurisdiction."). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). To establish fraudulent joinder, the removing party must prove: (1) that there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999) (citations omitted); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995); *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir.1995).

■ When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *See e.g. Cavallini*, 44 F.3d at 256. *See also LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir.1992) (holding that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment.... A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000). *See also Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir.2000) (finding that the "mere theoretical possibility of recovery under local law" does not preclude removal. Plaintiffs must show that there exists "a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that that defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000); *Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D.Miss. 2001) (J. Bramlette) (holding that the allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim."). Therefore, when responding to a charge of fraudulent joinder, a plaintiff must allege specific acts of wrongdoing on the part of the non-diverse defendant in the complaint and submit evidence to support those claims. *See Badon*, 224 F.3d at

390 (holding that removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant.").

■ When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *see Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), but *"only* when there exists an actual controversy, i.e. when *both* parties have submitted evidence of contradictory facts." *Badon*, 224 F.3d at 394. A court should not, "in the absence of any proof, assume that the non-moving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)) (alteration in original). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan*, 989 F.2d at 816.

### III. Analysis

IRC does not allege that Plaintiff engaged in actual fraud in the pleading of the jurisdictional facts in this case. Further, IRC does not dispute that the MDOT is a citizen of the State of Mississippi for the purpose of diversity analysis. Instead, IRC argues that Plaintiff cannot establish a cognizable cause of action against the MDOT because the claims of negligence alleged against it in the complaint are preempted by the Federal Railroad Safety Act of 1970 ("FRSA"), codified at 49 U.S.C. § 20101, *et seq.*

■ The FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To achieve these goals, the Secretary of Transportation is given broad power to "prescribe regulations and issue orders for every area of railroad safety." *Id.* at § 20103(a). The preemptive effect of the regulations promulgated under the FRSA is governed by the "savings and preemption clause" codified at 49 U.S.C. § 20106. Under this provision:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

*Id.* at § 20106. Thus states are allowed to adopt and continue in force their own laws regarding railroad safety until the Secretary of Transportation adopts regulations that cover the same subject matter. *See CSX Trans., Inc. v. Easterwood*, 507 U.S. 658, 662, 113 S.Ct. 1732, 123 L.Ed.2d 387

(1993). In addition to state statutory law, under the FRSA, "[l]egal duties imposed on railroads at common law fall within the scope" of the savings and preemption clause. *Id.* at 664., 113 S.Ct. 1732 Therefore, for a state law cause of action to be preempted by federal law, there must be a showing that "federal regulations substantially subsume the subject matter of the relevant state law." *Id.*

In support of her first claim that the MDOT was negligent in failing to install automatic gates at the subject railroad crossing, Plaintiff relies on Mississippi Code Annotated Section 65–1–175. This statute grants the MDOT exclusive jurisdiction "with respect to public roadway/railroad crossings ... except to the extent that its jurisdiction is preempted by valid federal statute, regulation or order." MISS. CODE ANN § 65–1–175. Under this statute, the MDOT:

> [S]hall have the power, upon its own motion, or upon complaint, and after having made proper investigation ... to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night, or other warning devices in order to promote the health and safety of the public... The department shall have the authority to determine the number, type and location of such signs, signals, gates or other protective devices which shall conform as near as may generally recognized national standards, and the department shall have the authority to prescribe the division of the cost of the installation and subsequent maintenance of such signs, signals, gates or other warning devices between the rail carrier or carriers, the public highway authority in interest and the [MDOT].

*Id.* Additionally, under Mississippi Code Annotated Section 65–1–8(2)(f), the MDOT has the authority and duty to "require the railroad at grade crossings, where any road of the state highway system crosses the same, to place signal posts with lights or other warning devices at such crossings at the expense of the railroad." Plaintiff alleges that the MDOT breached its duties under the above referenced statutes by failing to install automatic gates at the subject crossing despite its knowledge of the existing hazardous condition. The issue before the Court is whether this claim is preempted by federal law.

The record shows that at the time of the incident, the subject railroad crossing was equipped with cantilever post-mounted automatic flashing warning lights that were installed with the use of federal funds. *See* Response, Exhibit A. The United States Supreme Court has found that in cases in which federal-aid funds have participated in the installation of warning devices at railroad crossings, states are subject to the federal regulations, set forth in 23 C.F.R. §§ 646.214(B)(3) and (4), which specify the type of warning device that must be installed. *See CSX Trans., Inc. v. Easterwood,* 507 U.S. 658, 666, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). If the conditions enumerated in 23 C.F.R. § 646.214(B)(3), i.e. multiple tracks, high speed trains operating in areas of limited visibility, heavy vehicle or train traffic, or diagnostic team recommendation, are present, the state must install automatic gates and flashing lights. *See Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 354, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000). If, however, the factors enumerated in 23 C.F.R. § 646.214(b)(3) are absent, § 646.214(b)(4) "dictates that the decision as to what devices to install is subject to [Federal Highway Administration ('FHWA') ] approval." *Id.* Importantly,

> [i]n either case, § 646.214(b)(3) or (4) 'is applicable' and determines the type of warning device that is 'adequate' under

federal law. As a result, once the FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation 'displace[s] state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained.'

*Id.* (quoting *Easterwood,* 507 U.S. at 670, 113 S.Ct. 1732).

■ As indicated above, federal funds were used to install the automatic flashing lights present at the subject railroad crossing. "The fact that federal funds participated in the installation of the warning devices legally presupposes that the Secretary [of Transportation] approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined that the safety devices installed were adequate to their task." *Hester v. CSX Transp., Inc.,* 61 F.3d 382, 387 (5th Cir.1995). The Court, therefore, finds that 23 C.F.R. § 646.214(b)(3) and (4) are applicable as the FHWA approved the installation of the automatic flashing lights, the lights were "actually installed and operational, and federal funds were used to install the warning devices." *See Shanklin,* 529 U.S. at 345, 120 S.Ct. 1467. The Court further finds that as 23 C.F.R. § 646.214(b)(3) and (4) establish a standard of adequacy for the type of warning devices to be installed at federally-funded railroad crossing, they "cover the subject matter" of the type of warning device to be installed thereby preempting state law. *See Easterwood,* 507 U.S. at 671, 113 S.Ct. 1732. *See also Shanklin,* 529 U.S. at 359, 120 S.Ct. 1467 (holding that once the FHWA approved the warning devices to

be installed at a railroad crossing and the devices were installed using federal funds, "the federal standard for adequacy displaced [state] statutory and common law addressing the same subject, thereby preempting" a failure to maintain adequate warning devices claim under state law). Accordingly, the Court finds that Plaintiff's "failure to install gates" claim alleged against the MDOT, which challenges the adequacy of the warning device present at the subject railroad crossing is preempted under federal law and, therefore, that Plaintiff has no possibility of establishing a cause of action of negligence against the MDOT in state court.[1]

■ Plaintiff next alleges that although the MDOT authorized and directed IRC to install automatic gates at the subject railroad crossing on or about December 19, 1999, it was negligent in failing to install the gates in a timely manner. Plaintiff, however, has not presented any evidence to show that the MDOT issued such authorization or direction. The only evidence presented on the issue of decisions made by the MDOT regarding the type of warning devices to be installed at the subject railroad crossing is the affidavit of Steven K. Edwards ("Edwards"), a Rails Division Engineer and employee of the MDOT. *See* Response, Exhibit A. In his affidavit, Edwards avers that the Mississippi State Highway Department administered a Rail Grade Protection Project in 1995 and 1996 and, as part of that project, federal funds were used to install the automatic flashing lights at the subject railroad crossing. There is no evidence in the record to show that the MDOT reassessed the adequacy of the warning devices present at the sub-

---

**1.** Plaintiff has not presented any evidence or argument to show that the factors and/or conditions present at the subject railroad crossing which, in her opinion rendered the crossing extra-hazardous, are not those enumerated in 23 C.F.R. § 646.214(b)(3). The Court, therefore, finds that the savings clause, codified at 49 U.S.C. § 20106, in not applicable on Plaintiff's negligent "failure to install gates" claim.

ject crossing or decided to there install additional warning devices. The Court finds, after piercing the pleadings, that Plaintiff did not satisfy her burden of showing that the MDOT was not fraudulently joined as a defendant in this case.

■ The Court also finds that Plaintiff's "delay in gate installation" claim is one that essentially again challenges the adequacy of the automatic flashing lights then existing at the subject railroad crossing. The conclusion of the Court is supported by the allegations of Plaintiff that both Defendants were aware of the "extra-hazardous condition of the subject crossing," that they recognized the need to install warning devices in addition to the automatic flashing lights then present at the crossing, but that they negligently delayed the construction of adequate warning devices, i.e. automatic gates. *See* Complaint, ¶¶ 9–11. The Court finds, for the reasons discussed above, that this claim is preempted under federal law.

The United States Supreme Court has found that the FRSA does not prevent "a State from revisiting the adequacy of the devices installed using federal funds" and permits a state "to install more protective devices at such crossings, with their own funds or with additional funding from the FHWA." *Shanklin,* 529 U.S. at 358, 120 S.Ct. 1467 (2000). However, the *Shanklin* Court also found that the issue of "[w]hether the State should have originally installed different of additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question." *Id.* States cannot, once they have installed federally funded devices at a particular crossing, hold parties responsible for the adequacy of those devices under state law. *Id.*

■ In the case *sub judice,* Plaintiff apparently alleges that the automatic warning lights at the subject railroad crossing were inadequate based on the dangerous conditions there existing. Plaintiff further alleges that Defendants failed to correct this problem by timely implementing additional warning devices. The decision-making authority of the state, however, with regard to the type of warning device to be installed at the subject crossing is preempted by the federal regulations set forth in 23 C.F.R. § 646.214(b)(3) and (4). *See . Shanklin,* 529 U.S. at 359, 120 S.Ct. 1467. *See also Armijo v. Atchison, Topeka & Santa Fe Ry. Co.,* 87 F.3d 1188, 1192 (10th Cir.1996) (finding that "the issue is not what warning system the federal government determines to be necessary, but whether the final authority to decide what warning system is needed has been taken out of the railroad's and state's hands."). As federal funds paid for the installation of the automatic warning lights present at the subject crossing, it is legally presupposed that those safety devices were adequate, *see Hester v. CSX Transp., Inc.,* 61 F.3d 382, 387 (5th Cir.1995), and the state was relieved of any duty to upgrade the crossing. *See Bock v. St. Louis Southwestern Ry. Co.,* 181 F.3d 920, 923 (8th Cir.1999) (holding that after a federally funded warning device was installed and operational at a railroad crossing, the state was relieved of any obligation under state law to "sua sponte" upgrade that crossing); *St. Louis Southwestern Ry. Co. v. Malone Freight Lines,* 39 F.3d 864, 867 (8th Cir.1994) (finding that "[b]efore preemption, the public is protected by a railroad's state common-law duty of care. After installation of federally mandated warning devices, the public is protected by those devices."). The Court finds that as any common law duty on the part of the MDOT to install warning devices at the

subject crossing in addition to those determined adequate by the FHWA is preempted, there cannot be a common law duty to timely install such additional devices.[2] Accordingly the Court finds that Plaintiff's "negligent delay in gate installation" claim alleged against the MDOT, which again challenges the adequacy of the warning device present at the subject railroad crossing, is preempted under federal law and, therefore, that Plaintiff has no possibility of establishing a cause of action against the MDOT on this claim in state court.

■ The Court finds that non-diverse Defendant the MDOT was fraudulently joined and therefore, that its citizenship should not be considered for the purpose of diversity of citizenship jurisdiction analysis under 28 U.S.C. § 1332. The Court additionally finds that as the statutory requisites for diversity of citizenship jurisdiction are satisfied, the Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. The Motion of Plaintiff to Remand is therefore denied.

### IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Plaintiffs to Remand [5–1] is hereby denied.

---

2. In support of her "negligent delay in gate installation" claim, Plaintiff relies on *Powers v. CSX Transp., Inc.,* 97 F.Supp.2d 1297 (S.D.Ala.2000), a case in which the district court found that a failure to timely install active warning devices following federal authorization was not preempted under the FRSA. In the case *sub judice,* however, there has been no showing that the automatic gates allegedly authorized by the MDOT were federally approved. Accordingly, the Court finds that *Powers* is distinguishable on its facts.