Aldo Olaf HERNANDEZ, a minor, by Nelly Hernandez, and Jaime Hernandez, his parents and natural guardians, et al., Respondents,

v.

STATE of Minnesota, Respondent (A03–1433), Appellant (A03–1445),

City of Marshall, Appellant (A03–1433), Respondent (A03–1445),

Jesus Pineda, a/k/a Pablo Rodriguez, Respondent,

Laura Leticia Salinas, Respondent.

Nos. A03–1433, A03–1445.

Court of Appeals of Minnesota.

May 25, 2004.

Sharon L. Van Dyck, Paul E. Godlewski, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, for respondents Hernandez.

Mike Hatch, Attorney General, W. Karl Hansen, Assistant Attorney General, St. Paul, MN, for appellant State of Minnesota.

Paul D. Reuvers, Jason J. Kuboushek, Iverson Reuvers, LLC, Bloomington, MN, for appellant City of Marshall.

Fred Soucie, Soucie, Buchman & Bolt, Ltd., Anoka, MN, for respondent Laura Leticia Salinas.

Jesus Pineda, Worthington, MN, pro se, respondent.

Considered and decided by PETERSON, Presiding Judge; LANSING, Judge; and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

In this consolidated appeal from summary judgment in a negligence action for personal injuries sustained in a train-car collision, the State of Minnesota and the City of Marshall argue that the district court erred by failing to apply federal-preemption or governmental-immunity doctrines to dismiss all of the claims. By notice of review, Aldo Hernandez argues that the district court erred by determining that federal law preempts his claim for negligent placement of a stop sign at the railroad crossing. Because federal law preempts common law negligence actions for failure to provide adequate warning devices at a railroad crossing and also preempts common law negligence actions against the state and the city for allegedly failing to timely install additional warning

devices, we affirm in part and reverse in part.

## FACTS

A train operated by the Burlington Northern and Santa Fe Railway Company (BNSF) struck a car at the Legion Field Road railroad crossing in Marshall, Minnesota on January 3, 1999. Aldo Hernandez, a child sitting in the back seat of the car, sustained severe and permanent injuries as a result of the collision.

At the time of the collision, the Legion Field crossing was marked with retro-reflective stop signs, advance-warning signs, pavement markings, and crossbucks. Crossbucks are the posted black-and-white, X-shaped signs that read "RAILROAD CROSSING." These safety devices, referred to as passive devices, were installed as part of the "Corridor 11 project," which was initiated by the Minnesota Department of Transportation (Mn/DOT) in 1991 to improve safety at grade crossings along the BNSF corridor between Willmar, Minnesota and the South Rock County Line in South Dakota. When the project was initiated, the Legion Field crossing had only advance-warning signs and crossbucks. The Federal Highway Administration (FHWA) approved the Corridor 11 project and funded ninety percent of the cost to install the additional warning devices.

Approximately ten months prior to the accident, the state initiated another project for additional warning devices at the Legion Field crossing. The proposed warning devices included automatic gates and signals, referred to as active warning devices. The state allocated funds from the FHWA to help finance the project and executed a contract with BNSF for the installation of the gates and signals. The project was not authorized to begin until January 19, 1999, because a number of state agencies, including Mn/DOT, the Attorney General's Office, and the Department of Administration, were in the process of reviewing the contract and recommending whether to approve the project.

Following the accident, Hernandez's parents, on behalf of Aldo Hernandez, sued, among others, BNSF, the City of Marshall, and the State of Minnesota. The complaint alleged that the state and the city were negligent in failing to install automatic gates and signals at the crossing. The complaint also raised negligence claims against BNSF. A settlement was reached with BNSF and, by stipulation, BNSF was dismissed from the action.

The city and state separately moved for summary judgment, arguing that federal law preempted Hernandez's claims and that they were immune from liability. The state also argued that it was entitled to vicarious official immunity and immunity under Minn.Stat. § 219.402 (2002). Hernandez moved for partial summary judgment, arguing that the district court should strike the state's and city's affirmative defenses of federal preemption, statutory immunity, and the state's defense of official immunity.

The district court granted Hernandez's motion and denied the state's and the city's motion, except it concluded that preemption applied to the location of the stop sign. The state and the city then filed separate appeals, which we consolidated. Hernandez filed a notice of review of the district court's conclusion that federal law preempts the negligence claims on placement of the stop sign.

## ISSUES

I. Does federal law preempt Hernandez's state-law negligence claims for fail-

ure to maintain adequate warning devices at a railroad grade crossing?

II. Does federal law preempt state-law negligence claims against the State of Minnesota and City of Marshall for failing to timely install additional warning devices?

## ANALYSIS

### I

■ Under the umbrella of the Supremacy Clause, U.S. Const., art. VI, cl. 2, federal law may preempt state law in three ways: (1) by an express statement of the extent to which the congressional enactment displaces state law, (2) by implication when congress has legislated so pervasively in a field that the federal system must be assumed to preclude enforcement of state laws on the same subject, and (3) by implication when congress enacts law that conflicts with state law and makes it impossible to comply with both federal and state requirements or makes the state law an obstacle to achieving the full purpose of the federal enactment. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).

The preemption issues raised in this appeal are a product of the interplay between two federal acts, the Federal Railroad Safety Act (FRSA) and the Federal Highway Act (FHWA). Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents." 49 U.S.C. § 20101 (2000). The FRSA contains a preemption provision that is conditioned on administrative action but is nonetheless express:

Laws, regulations and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad

safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106 (2000).

In 1973, Congress enacted the Highway Safety Act, which created the Federal Railway Highway Crossings Program. *See* Highway Safety Act of 1973, Pub.L. No. 93–87, 87 Stat. 250 (codified at 23 U.S.C. §§ 130, 152 (2000)). This program provides funding to states for the cost of projects designed to eliminate hazards at railway-highway crossings. 23 U.S.C. § 130(a). Regulations have been promulgated under the FHWA to implement the crossing program, including regulations that govern the design of grade-crossing improvements and the adequacy of warning devices installed under the program. 23 C.F.R. § 646.214(b) (2004). These regulations, set forth in sections 646.214(b)(3) and (4), contain three provisions that pertain to the preemption issues raised in this appeal. The first provision specifies the conditions under which adequate warning devices are to include automatic gates with flashing lights. *Id.* (b)(3)(i). The second provides that in individual cases when a diagnostic team justifies that gates are not appropriate, FHWA may find that the requirements do not apply. *Id.* (b)(3)(ii). The third provides that if the requirements of § 646.214(b)(3) are not applicable to a particular crossing, the type of warning device to be installed is subject to approval by the FHWA. *Id.* (b)(4).

In two successive cases, the United States Supreme Court has resolved the issue of whether these FHWA regulations, read in combination with the FRSA express-uniformity provision, preempt a plaintiffs state tort claim for injuries from an alleged failure to maintain adequate warning devices at a railroad grade crossing. *Norfolk S. Ry. v. Shanklin*, 529 U.S.

344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000); *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

In *Easterwood,* the Supreme Court determined that the express-uniformity provision allows for preemption not only of state statutory and regulatory law, but also of state common law to the extent that federal regulations are adopted that substantially subsume the same subject matter. *Easterwood,* 507 U.S. at 664, 113 S.Ct. at 1737–38. The Court specifically concluded that sections "646.214(b)(3) and (4) displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained." *Id.* at 670, 113 S.Ct. at 1741. The Court ultimately concluded, however, that the plaintiff's state tort claim was not preempted because the warning devices for which federal funds had initially been obtained were never installed at the crossing where the collision occurred, and the federal funding was diverted to another intersection. *Id.* at 671–73, 113 S.Ct. at 1741–42. Thus preemption did not defeat Easterwood's claims, but only because federal monies were not expended on the passive warning devices at the crossing where the collision occurred. *Id.* at 673, 113 S.Ct. at 1742.

In *Shanklin,* the Court reiterated that the requirements spelled out in sections 646.214(b)(3) and (4) are mandatory for all warning devices installed with federal funds. *Shanklin,* 529 U.S. at 353–54, 120 S.Ct. at 1474. The warning devices in *Shanklin* were installed using federal funds. *Id.* at 347, 120 S.Ct. at 1471. Addressing the preemptive effect of sections 646.214(b)(3) and (4), the Court stated that these sections establish a standard of adequacy that "determine[s] the devices to be installed" when federal funds participate in the crossing improvement project. *Id.* at 354, 120 S.Ct. at 1474 (quotation omitted). "As a result, once the FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation displace[s] state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained." *Id.* (quotation omitted).

The Court in *Shanklin* described the preemptive effect: "When the FHWA approves a crossing improvement project and the State installs the warning devices using federal funds, §§ 646.214(b)(3) and (4) establish a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject." *Id.* at 357, 120 S.Ct. at 1476. The Court further described the displacement:

It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) ... that pre-empts state tort actions. Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question.

*Id.* at 357–58, 120 S.Ct. at 1476.

The relevant facts in *Shanklin* do not differ from the facts of Hernandez's claim. Shanklin, the widow of a man killed in a crossing accident, sued the railroad for its alleged failure to maintain adequate warning devices at a grade crossing in Tennessee. *Id.* at 347, 120 S.Ct. at 1470–71. At the time of the accident, the crossing was equipped with advance-warning signs and reflectorized crossbucks. *Id.* at 350, 120 S.Ct. at 1472. The Tennessee Department of Transportation had installed these de-

vices with federal funds as part of a project to improve various crossings throughout the state. *Id.*

Hernandez argues, as *Shanklin* argued, that maintaining only passive warning devices, when the factors listed in section 646.214(b)(3)(i)(E) require active warning devices, constitutes actionable negligence. The state and city argue that no determination has been made on whether the Legion Field crossing met those factors. But that issue is immaterial in light of the FHWA approval of the passive warning devices. *See id.* at 354, 120 S.Ct. at 1474 (regardless of whether the factors are absent or present, " § 646.214(b)(3) or (4) 'is applicable' and determines the type of warning device that is 'adequate' under federal law").

█ The record in this case, as in *Shanklin*, confirms that federal funds were used to install the passive warning devices. The record shows that the FHWA approved the Corridor 11 project to install crossbucks, retro-reflective stop signs, advance-warning signs, and pavement markings at the Legion Field crossing. The record also shows that the FHWA financed ninety percent of the costs to install these warning devices. Because the federal government approved and financed the installation of the passive warning devices at the Legion Field crossing, these devices are conclusively established as "adequate," and state tort claims alleging the inadequacy of these devices are preempted. *See id.* at 357, 120 S.Ct. at 1476. This is true regardless of whether the state or the FHWA adhered to the standards for warning devices established in sections 646.214(b)(3) and (4). *See id.* at 357–58, 120 S.Ct. at 1476 (stating "[w]hether the State should have originally installed different or additional devices . . . is immaterial to the pre-emption question"); *see also Bock v. St. Louis Southwestern Ry.*, 181

F.3d 920, 923 (8th Cir.1999) (stating that the issue "is not what warning system the federal government determines to be necessary, but whether the final authority to decide what warning system is needed has been taken out of the railroad's and the state's hands" under sections 646.214(b)(3) and (4) (quotation omitted)). In other words, "[i]t is the identity of the decision-maker, and not the accuracy of the decision, that determines preemption." *Powers v. CSX Transp., Inc.*, 97 F.Supp.2d 1297, 1303 (S.D.Ala.2000). The district court erred by concluding that Hernandez's state tort claims, which squarely rest on the claimed inadequacy of the warning devices at the Legion Field crossing, are not preempted by federal law.

█ Hernandez, by notice of review, also argues that federal law does not preempt his claim that the city and state were negligent in the location of the Legion Field crossing stop sign. He reasons that stop signs are not warning devices designed for the purpose of indicating a railroad crossing and, therefore, they are not preempted by section 646.214(b). Passive railroad warning devices are defined as "those types of traffic control devices, including signs . . . located at or in advance of a grade crossing to indicate the presence of a crossing. . . ." 23 C.F.R. 646.204 (2004). The record shows that the stop sign at the Legion Field crossing is located on the same post as the crossbuck and was installed as part of the Corridor 11 project to increase safety devices at railroad crossings. The stop sign constitutes a passive warning device designed to indicate the presence of the Legion Field crossing. Thus, for the same reasons that we concluded that federal law preempted a state-law negligence action for inadequate warning devices, we conclude that federal law preempts Hernandez's state-law claim

alleging negligent placement of the stop sign.

The final distinction that Hernandez advances is between the identity of the defendants in *Easterwood* and *Shanklin*—railroads—and the identity of the defendants in this case—governmental entities. Hernandez contends that the rationale of *Easterwood* and *Shanklin*, formulated for railroad defendants, does not apply to governmental entities. We disagree. Because the essential question in the state negligence action is whether the defendant has a duty to the plaintiff, the issue is "whether the final authority to decide what warning system is needed has been taken out of the railroad's and the *state's* hands...." *Bock*, 181 F.3d at 923 (emphasis added). The state as well as the railroad is "no longer duty-bound in the tort sense, for causes of action based on the adequacy of the crossing safety device." *Id.* (addressing absence of railroad's duty in the face of federal preemption); *Smallwood v. Ill. Cent. R.R.*, 203 F.Supp.2d 686 (S.D.Miss.2002) (addressing the absence of the state's common law duty to install additional devices in the face of federal preemption).

The FHWA was charged with deciding what warning devices were appropriate for the Legion Field crossing and the FHWA approved the changes made to the crossing under the Corridor 11 project, which included additional passive warning devices but not active warning devices. Because the FHWA was the decisionmaker, Hernandez's claims against the state and city alleging inadequate warning devices at the Legion Field crossing are preempted.

## II

As a second ground for his state-law negligence action, Hernandez argues that the state and city were negligent in delaying the installation of active warning devices at the Legion Field crossing. This precise argument was raised in *Bock*. In *Bock*, a fatality occurred as a result of a train-car collision at a grade crossing protected only by reflectorized crossbucks. *Bock*, 181 F.3d at 921. The crossbucks were installed with federal funds as part of a statewide initiative in Arkansas to improve the safety of all railroad grade crossings. *Id.* At the time of the accident, however, a federally funded project to install lights and automatic gates at the crossing had been approved. *Id.* The deceased's spouse sued the railroad, arguing, in part, that the railroad negligently delayed the installation of the active warning devices at the crossing. *Id.* at 923. The Eighth Circuit Court of Appeals stated that the project to install the active warning devices at the crossing was "irrelevant," and held that any Arkansas common law tort cause of action for negligently delaying the installation of the devices was preempted because federal funds were used to install the crossbucks in place at the time of the accident. *Id.*

The *Bock* court reasoned that a claim of negligent delay is essentially founded on the premise that the existing and approved warning devices are inadequate and that the final authority to decide what warning system is adequate has been preempted by federal regulation. *Id.* Since *Bock*, two federal district courts have analyzed this question. In *Powers* the court concluded that while sections 646.214(b)(3) and (4) "substantially subsume the subject matter of the *selection* of adequate grade crossing warning devices, ... they do not substantially subsume the subject matter of timely *installation* of such devices once selected." *Powers*, 97 F.Supp.2d at 1307. In holding that the plaintiff's negligent-delay claim is not preempted, the court reasoned that the language in sections 646.214(b)(3) and (4) does not "set forth any requirements for

the timely installation of approved warning devices." *Id.* at 1305.

In *Smallwood* the court adopted the *Bock* rationale, reasoning that a delay-in-gate-installation action challenges the adequacy of the existing warning devices and that once federally funded devices have been installed, state law cannot be used to make that determination. *Smallwood,* 203 F.Supp.2d at 693. The court concluded that any common law duty of the state to install warning devices in addition to those determined adequate by the FHWA is preempted; consequently, "there cannot be a common law duty to timely install such additional devices." *Id.*

The *Bock* and *Smallwood* decisions parallel the reasoning in *Easterwood* and *Shanklin* that sections 646.214(b)(3) and (4) "displace[] state and private decision-making authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained." *Shanklin,* 529 U.S. at 354, 120 S.Ct. at 1474 (citing *Easterwood,* 507 U.S. at 670, 113 S.Ct. at 1732). We therefore conclude that the state and the city have no common law duty that could be violated by failing timely to install additional warning devices. Because we conclude that the negligent-delay claim is preempted by federal law, we do not address the state and the city's alternative argument that governmental-immunity doctrines preclude the imposition of liability for their decisions.

### D E C I S I O N

The district court correctly concluded that 23 C.F.R. § 646.214(b) (2004) preempts Hernandez's state tort claim alleging negligent placement of the stop sign at the Legion Field crossing. That same provision preempts Hernandez's remaining claims alleging inadequate warning devices at the Legion Field crossing and preempts his common law negligence claim against the city and the state for failure timely to install active warning devices. Because we conclude that federal law preempts all of Hernandez's state tort claims, we do not reach the issue of whether the State of Minnesota or the City of Marshall are entitled to immunity.

**Affirmed in part and reversed in part.**